Wilson et al *v.* Vincennes-Mississippi Land & Lumber Co.

[74 South. 825, Division B.]

Logs and Logging. *Sale of timber. Agreement of vendor to pay taxes. Construction. Land.*

> Where a vendor sold timber under a contract providing for its removal in six years, and that possession was given only for the purpose of carrying out the contract and that the vendor agreed to pay all taxes on the "land" during the continuance of the purchaser's right, the vendor was liable to the purchaser for taxes paid by him on the standing timber, although the timber was assessed separately from the land, since the term "land" embraced timber growing thereon.

Appeal from the chancery court of Washington county. Hon. E. N. Thomas, Chancellor.

Suit between the Vincennes-Mississippi Land & Lumber Company and Calhoun Wilson and others. From a judgment for the former, the latter appeals.

The facts are fully stated in the opinion of the court.

*Gardner, McBee & Gardner,* for appellant.

We say that in order to properly decide this case, the question is: Conceeding the assessment made by the authorities to be proper (and this seems to be conceded by both briefs), that the assessment and the taxes are as is meant by the contract sued on.

Responding to the case cited in appellee's brief *Globe Lumber Company, Ltd.* v. *Lockett,* 30 So. 902, the question there decided was: "That the owner of the land must pay taxes on it; the owner of the timber must pay taxes on it; and the assessments must be separate."

We have no quarrel with this decision, in fact, we say that if we had appeared before the, board of supervisors and resisted the assessment, that we neces-sarily would have lost, being the owners of the timber, should pay taxes on it, and that any contract we might have with appellees was a matter to be fixed to the contract and in a suit between the parties thereto for that particular purpose.

Appellees cite at length in their brief from the case of *Williams* v. *Trinche,* 31 So. 926. Waiving the point, which we do not think material here, that the citation in the brief is from the opinion by the district court, which was appealed from and reversed in the opinion of the supreme court of Louisiana, rendered by NICHOLLS, C. J. We contend that this opinion is not against our conten-tion but in fact for it; "In passing upon the issues in-volved in this litigation it must be borne in mind that we are not determining the property rights between Williams and the Godchaux Company, but interpreting the legal situation viewed from the standpoint of the enforcement of rights and remedies of the state as fixed by her own law." *Williams* v. *Triche,* 31 So. 926, 930.

"As a matter of course, contract rights and obligations exist and may be enforced between the owner of the legal title and third parties inside of the legal title, if that expression can be used; but until the title actually shifts, the state has nothing to do with them, unless she so expressly declares herself willing to do by sta-tute." *Williams* v. *Triche,* 31 So. 926, 932.

Our idea is, that, in this case, Calhoun Wilson was primarily liable for the taxes on the timber, but that he could not be held liable for taxes that followed an assessment under the column of the Assessment Roll, "Vauation of Wild and Uncultivated Land, Excluding Timber," for he never bought any land, was never the owner of any land under the contract sued on, and appellees undertook to pay this tax in their contract.

Under the law he was primarily liable, to use the expression in the above decision, "for the taxes on the timber." By virtue of the contract, we submit that he had made arrangements between himself and appellees "to pay the whole debt; to wit, the taxes, and that they are liable and should be held to pay all of the taxes covered by this suit.

We submit, that to place the construction on this contract desired by appellees, would be to make the clause contained in it with reference to payment "all taxes on the land" absolutely meaningless.

*Percy Bell,* for appellee.

We have no quarrel with appellants that growing timber is land, as that is too well settled for discussion. The court will notice, however, that the agreement and contract of the appellees was to pay the taxes on the lands described," and certainly the description did not include the timber. There can be no possible reason adduced why the appellees should pay the taxes on the property of the appellants; that separate interests can be, should be, and are separately assessed and paid for by the respective owners, is settled in a number of cases. There are innumerable cases involving mines and minerals, where the minerals lying beneath the surface of the land are sold, and the purchaser thereof pays the taxes thereon, while the owner of the land itself, pays the land taxes. We shall not burden the court with quotations from these cases, which the court will find cited in great quantity in the Century Digest, Title, Taxation, section 147, and the Centennial Digest, same title, section 63.

The exact question that arises and is presented in the instant case, however, has been before the courts and decided. In the case of *Globe Lumber Company, Ltd.* v. *Lockett,* 30 So. 902. However, the question was presented also on the case of *Williams* v. *Triche,* 31 So. 926, where the court held that where the owner of

land makes a contract by which he conveys rights to
the trees standing on land, which rights fall short of
ownership, that there cannot be a separate assessment,
which case in reason supports the position of appellees
in the instant case, for the reason that in the case at
bar, there was a sale of the trees themselves, not the
sale of the right to cut them.

An illuminating case is that of *Fox* v. *Pearl River
Lumber Company,* 31 So. 583, from which we quote as
follows: "By the common law, trees are a part and
parcel of the land upon which they are growing or
standing, for the term "Land" embraces not only the
soil, but its natural productions; and trees growing or
standing upon the land are not distinguishable  in
their character of real estate from the soil itself until
they are actually severed from the soil. *Harrell* v. *Mil-
ler,* 35 Miss. 702, 72 Am. Dec. 154; *Jones* v. *Flint,* 10
Adol. & E. 753; *McKenzie* v. *Shows,* 70 Miss. 388, 12 So.
336, 35 Am. St. Rep. 654. By the common law also
several sorts of estates or interests, joint or several,
may exist in the same fee; as that one person may
own the ground or soil, another the structures thereon,
another the minerals beneath the surface, and still
another the trees and wood growing thereon, etc.,
the counsel for appellee, as we understand his con-
tention, does not deny that the interest of appellee in
the standing timber on the soil of another in Lawrence
county is real estate, but that it is real estate assessable
only to the owner of the ground or soil, and that the
separate assessment of it to appellee by the assessor
of Lawrence county is illegal and void. It is too plain
for argument that by the common law as administered
in England and in this state, the right and interest of
appellee to the timber standing upon the lands of others
in Lawrence county is an interest in real estate; and
we see no reason why appellee's said interest, being
worth according to its own valuation, more than
twenty-five thousand dollars, should not be separately

114 Miss.—13

assessed to it as the owner thereof. Our revenue law requires land to be assessed to the owner (section 3753) that, if there be more than one claimant, they should all be named (section 3774); that each owner should give in his land at its intrinsic value (section 3759); and, as each owner lists and values his own property, it reasonably follows that his separate interest, whatever it be, should be separately assessed. Such assessments are held valid in other jurisdictions. *People* v. *Board of Assessors of City of Brooklyn*, 93 N. Y. 308; *Water Co.* v. *Lynn,* 147 Mass. 31, 16 N. E. 742; *Kern Valley Water Company* v. *Kern County,* 70 Pac. 476; *Fletcher* v. *Alcona Township,* 72 Mich. 18, 40.

Of course, if the appellees had contracted and agreed to pay this timber tax, they would be bound for it, but their agreement and contract was to pay the taxes on the land, and as we think we have seen by the authorities, this is a totally different tax from the timber tax.

Stephens, J., delivered the opinion of the court.

Appellant Calhoun Wilson, operating under the trade-name of Wilson Land & Lumber Company, purchased from appellee all the merchantable timber on about three thousand one hundred acres of land in Washington county with the right to cut and remove the timber so purchased within six years from January 1, 1913. The contract between the parties bears date of September 14, 1912. By the term of the contract, five hundred acres in one body and all timber thereon are to revert back to the grantor at the expiration of the year 1913, and "five hundred acres each following year until the tract is finished, with the understanding that during the last year 1918 said party of the first part be required to remove only what is left on said tract, and the said party of the second part is to complete the cutting of the timber as it goes, turning back to the grantor the land which has been cut over and from which the timber has

been removed, and thereafter the party of the second part is not to enter upon the said land for the purpose of further cutting. . . . Possession is only given said party of the second part for the purpose above set forth; otherwise, fully retained by party of the first part.''

The controversy presented by this appeal arises out of the following clause:

''Party of the first part agrees to pay all taxes on the land above described, payable during the times that said party of the second part's right continues, and upon its failure to pay taxes of any year on or before the 15th day of December of the year in which said taxes become due and payable, the said party of the second part shall have the right to pay said taxes and any sum or sums so expended, together with six per cent. per annum interest thereon, shall constitute a lien upon the land above described in favor of the said party of the second part, which lien shall be enforcible through the chancery court of Washington county, Mississippi.''

One-half of the total consideration for the conveyance was paid in cash, and the remainder was agreed to be paid in one and two years as evidenced by two promissory notes secured by express vendor's lien, and certain provisions of the contract regulated the manner in which the timber might be cut and also at the same time preserve sufficient security for the unpaid purchase money. One clause of the contract expressly provides:

''That the timber is sold for the purpose of being cut, and the said party of the second part has a right to cut same free from the lien of the purchase money in the manner hereinbefore provided for.''

It appears that at the time the conveyance was executed the timber was assessed along with the land to appellee. After the execution of the timber deed, the board of supervisors separately assessed the timber to the appellant. This was done without the consent and against the wish of appellant. Appellee paid the

taxes for the year 1914, while appellant Calhoun Wilson was required to pay the same for the year 1913. There is an agreement in the record that, at the time of the execution of the timber, deed, neither of the parties had actual knowledge of the enactment of chapter 89, Laws of 1912, providing for a better assessment roll for assessing realty. The question presented is: Who is liable for the taxes on the timber for the years 1913 and 1914, the only tax that had accrued at the time this suit was filed? The answer to this question depends upon the proper construction of that clause of the conract hereinabove quoted—the express stipulation in reference to the taxes.

The agreement, in our opinion, contemplated and means that appellee, as landowner, was to pay all lawful taxes upon the land and timber. At the time of this agreement, the timber was a part of the realty and assessed along with and as a part of the regular assessment of appellee's lands. The value of the timber then constituted a component part of the taxable valuation of the land. There is no agreement by the parties that the timber is to be separately assessed, and Mr. Wilson by his contract obtained only a qualified or limited interest in the timber purchased. It will be noted that five hundred acres of the land was to be returned at the expiration of the year 1913, a little more than one year after the date of the contract, and five hundred acres were to be returned each year thereafter. It was reasonable for appellant to require appellee to pay the taxes on the land with all of its fixtures and all the elements of value that conspired to make up the grant total valuation of the land on the assessment roll. There would be no good reason for requiring the landowner to pay upon his own land, the mere soil, in which appellant had no interest. There could in no event be any obligation upon Mr. Wilson to pay the taxes on appellee's lands. If appellee, however, should fail to pay the taxes on its lands or any part thereof, a sale

of the land with the timber affixed would place the timber rights of appellant in jeopardy. Under this particular contract there might be difficulty in assessing the timber each year separately from the land. At the expiration of the first year the timber on five hundred acres of the land would be removed, and, accordingly, all the timber could not equitably be assessed against appellant for a longer period than the first year. At the expiration of the second year, the timber upon the second five hundred acres would be cleared, and the land turned back to the grantor. If appellant for any reason failed to cut any of the timber required to be cut during any one year, the uncut timber by the terms of the contract reverted to the landowner along with the land, and the grantee is thereafter forbidden to enter for the purpose of further cutting. The very nature of the contract then suggests that the parties in the clause in controversy used the word ''land'' in the sense in which the term is generally employed, as meaning, not only the soil, but the timber thereon and everything affixed thereto.

''In this state, for more than thirty years, and since the opinion of this court in *Harrell* v. *Miller* 35 Miss. 700, 72 Am. Dec. 154, it has been settled law that trees growing upon land are part and parcel of the realty; that 'the term ''land'' embraces, not only the soil, but its natural products growing upon and affixed to it.' '' *McKenzie* v. *Shows,* 70 Miss. 388, 12 So. 336, 35 Am. St. Rep. 654.

Our court in the later case of *Fox* v. *Lumber Co.,* 80 Miss. 1, 31 So. 583, observed that:

''Trees growing or standing upon land are not distinguishable in their character of real estate from the soil itself, until they are actually severed from the soil.''

The contract before us grants rights and imposes obligations upon both parties, and under the express terms of the contract it was the duty of the appellee to

pay all taxes. The learned chancellor reached· a different conclusion, and his decree is, accordingly, reversed, and the cause remanded. It will be observed that this is in no wise a controversy between the revenue authorities and the parties to this litigation, but an issue between the parties themselves after all lawful taxes have been paid.

*Reversed and remanded.*